IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM J. GAVIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-12207-GAO |
| v. ) | |
| ) | |
| BULL HN INFORMATION ) | |
| SYSTEMS INC., ) | |
| Defendant. ) | |

**DEFENDANT'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, PURSUANT TO LOCAL RULE 56.1**

Defendant Bull HN Information Systems Inc. (hereafter "Bull") hereby submits in support of its Motion for Summary Judgment the following material facts of record, as to which no genuine dispute exists for trial, pursuant to L.R.D.Mass. 56.1:

The Parties

1. Bull is an international IT [Information Technology] group that designs and develops servers and software for both public and private enterprises. Its North American headquarters is in Billerica, Massachusetts.

2. Plaintiff William Gavin performed services for Bull as a graphic artist from 1974 until 1978, and thereafter from 1978 until November 2001.[1]

3. Gavin was initially hired by Honeywell (which merged with Bull Information Systems in 1987) in 1975 as a technical illustrator, performing graphic arts duties. (Gavin Deposition ("Dep.") 16, a true copy of which is annexed hereto as Exhibit "1"). (Hereafter, the term "Defendant" will be used to reference Honeywell, Bull and its various iterations).

4. In 1979, Gavin voluntarily left Defendant's employ.

---

[1] Plaintiff testified variously at his deposition that he left his employment with Bull in 1978 or 1979. Defendant adopts the 1979 date as the date that he returned to provide services to Bull, as that was the date pled in the complaint, for purposes of this motion.

5. In 1979, John Haskell, who at that time ran the Technical Illustration Department for Defendant, asked Gavin if he would "do a couple of jobs for him." Gavin agreed to do so. (Dep. 52).

6. Initially, Gavin provided services through a third party agency, Sullivan & Cogliano, who billed Defendant for the work Gavin performed and passed payment on to him. Sullivan & Cogliano withheld taxes from the payments provided to Gavin. (Dep. 65, 82-83).

7. Some time thereafter, in approximately 1980, "Gavin Associates" was created (later re-named "Gavin Studio,") and plaintiff performed services for Defendant, generating invoices that were paid by Defendant. (Dep. 59).

8. Gavin understood, when he performed services for Defendant in 1979, that he was not an employee of Defendant. (Dep. 57).

9. Gavin understood that Defendant did not consider him an employee, since Defendant created purchase orders directed to Gavin Studio. (Dep. 57).

10. Gavin understood in 1979 that Defendant considered him to be an independent contractor. (Dep. 59).

11. Gavin was paid by billing against a purchase order on invoices created by Gavin Studio. (Dep. 58).

12. Defendant did not deduct taxes or other costs from the payments made to Gavin on the invoices submitted. (Dep. 59). Gavin never requested that Defendant withhold taxes from the payments remitted to him. (Dep. 140-141).

13. Gavin was familiar with the benefits Defendant provided to its employees, having been an employee for approximately 4 years, prior to Haskell's request that he work on projects in 1979. (Dep. 59).

14. Gavin had received employee manuals during the period that he was an employee, and was aware of the vacation policies, retirement benefits, and health insurance plans that Defendant maintained for its employees. (Dep. 60-61).

15. Gavin understood that he was not considered an employee by Defendant in 1979, and consequently was not considered eligible for vacation time, participation in the company's health insurance program, or in its retirement benefits plans. (Dep. 61-62).

16. In addition to providing services for Defendant and its affiliates, Gavin Studio also contracted to perform work for organizations other than Defendant. (Dep. 28-38).

17. Gavin's wife, whom he married in 1981, was employed by Defendant as a graphic artist, and Gavin knew that she received health insurance, vacation time and

retirement benefits from Defendant. He understood that his wife received benefits as an employee, and that he did not, as Defendant considered him an independent contractor. Gavin was covered by his wife's health benefits during the time she was employed by Defendant. (Dep. 91-92).

18. During the years that he performed services for Defendant, Gavin periodically requested hourly rate increases. Each raise in his hourly rate came about at his request: In 1983, to $15/hour; in 1985, $20/hour; in 1991, $29/hour; and ultimately by 2001, to $60/hour. (Dep. 97-103).

19. During the entire period that he performed services for the company, from 1979-2001, Gavin understood that Defendant considered him an independent contractor and not an employee, and consequently did not deem him eligible for employment benefits. (Dep. 105).

20. In 1991, Gavin was asked to consider becoming an employee of Defendant by his then-supervisor, Linda Nidle. At the time, Gavin was being paid an hourly rate of $29 but was not receiving employee benefits. (Dep. 114-117).

21. Gavin was told that, if he were to become an employee, his pay would be $27 an hour, and he was aware that he would become eligible for employee benefits (including vacation pay, health insurance, and retirement benefits). (Dep. 114-117).

22. Gavin refused the offer, as he was not interested in becoming an employee "for that rate of pay." (Dep. 117).

23. Gavin knew that by refusing the offer to be classified as an employee, he would remain ineligible for employee benefits. (Dep. 117).

24. At no time from 1979 through November 2001 did Gavin ever ask Bull to withhold taxes from the payments due him. Gavin was aware that no taxes were withheld. (Dep. 141).

25. Gavin paid self-employment taxes annually, since 1979. (Dep. 107).

26. At some point, "long after" after being offered employment by Linda Nidle, Gavin was again given the option of becoming an employee by a subsequent supervisor, Ted Lavash. Gavin recalls Lavash saying that the Defendat was interested in converting all contractors to "CWD," or "contingent workforce division," and that this would entail the company withholding taxes and providing vacation pay. In response, Gavin said this "[d]oesn't sound like anything good to me," and did not pursue this option. (Dep. 142-143; 195-196).

27. Gavin has no evidence to suggest that Defendant intentionally mischaracterized him as an independent contractor, as alleged "on information and belief" in paragraph 6 of the Complaint; he testified at deposition that "my belief is that the size of the company that Bull is, they would know what the legal aspects of hiring someone are." (Dep. 145).

      28.    Gavin has no evidence that Defendant considered him an independent contractor in order to intentionally deprive him of any benefits. (Dep. 145).

      29.    Gavin has no evidence that any of Defendant's agents knowingly and intentionally defrauded him into believing that he was not entitled to employment benefits. (Plaintiff's Answers to Interrogatories Number 7, a true copy of which is annexed hereto as Exhibit "2").

      30.    Gavin has no evidence that any of Defendant's agents intentionally mischaracterized him as an independent contractor. (Plaintiff's Answers to Interrogatories Number 8).

      Respectfully submitted,

      BULL HN INFORMATION SYSTEMS INC.

      By: _____/s/ Mary Jo Harris_____
      Laurence J. Donoghue (BBO No. 130140)
      Mary Jo Harris (BBO No. 561484)
      Daniel F. McCabe, Jr. (BBO No. 661096)
      MORGAN, BROWN & JOY, LLP
      200 State Street
      Boston, MA 02109
      Tel: (617) 523-6666

Dated:    May 31, 2006

## CERTIFICATE OF SERVICE

      I, Mary Jo Harris, hereby certify that the foregoing document was filed through the ECF system on May 31, 2006, and that a true paper copy of this document was sent to those indicated as non registered participants on the Notice of Electronic Filing on May 31, 2006 by first class mail. I further certify that a courtesy copy of the foregoing document was served on May 31, 2006 by first class mail upon plaintiff's counsel: Howard I. Wilgoren, Esq., 6 Beacon Street, Boston, MA, 02109.

Dated: May 31, 2006                              _____/s/ Mary Jo Harris_____
                                                                     Mary Jo Harris