UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM J. GAVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 04-12207-GAO |
| | ) |
| v. | ) |
| | ) |
| BULL HN INFORMATION | ) |
| SYSTEMS INC., | ) |
| Defendant. | ) |

## PLAINTIFF WILLIAM J. GAVIN'S ANSWERS
## TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Now comes the Plaintiff; WILLIAM J. GAVIN ("Gavin"), pursuant to Rules

26 and 33 of the Federal Rules of Civil Procedure, and hereby answers the

following interrogatories which have been propounded by Defendant Optos, Inc.,

fully in writing and under oath.

### SPECIFIC INTERROGATORIES

INTERROGATORY NO. 1

Identify all persons who participated in the preparation of the answers to

these Interrogatories, including full name and address of each such individual.

RESPONSE NO. 1

William J. Gavin, 268 Orchard Street, Millis, MA 02054

INTERROGATORY NO.2

Identify all documents upon which you relied or to which you referred when preparing the answers to these Interrogatories.

RESPONSE NO. 2

I relied upon purchase orders in my possession which were issued to me by the defendant and the defendant's 1977 Honeywell Massachusetts Hourly employee handbook

INTERROGATORY NO.3

Identify each and every person whom you believe has information regarding the allegations that you have made in the complaint. Include in your answer the full name of each individual, their address, and a summary of the information they have.

RESPONSE NO. 3

All of my former supervisors had knowledge of the work that I performed for defendant including the manner and method in which I performed those duties under their direction and control. They are each aware of the fact that I had an office at defendant's premises, a telephone with a dedicated extension which was listed in the employee directories, a computer with a facsimile line provided by defendant for my use. They were also aware that I had an e - mail address on the defendant's server which was Bill.Gavin@Bull.com. They were also aware that I had an internet connection at my desktop computer which was located in the offices provided to me by defendants The names of each of my supervisors were Mitch Mitchell, deceased, Steven Miles, John Haskell, Ted Lavash, Sandra

Richardson, deceased, and Peter Stavropulous. I believe Miles and Haskell live in Florida, Lavash lives in Lowell and Stavropulous lives in Wayland.

INTERROGATORY NO.4

Identify each witness you intend to call at the trial of this action, including in your answer the full name of each individual, their address, and a summary of the individual's anticipated testimony.

RESPONSE NO. 4

I have not  identified what witnesses, other than me, that I intend to call to testify in the trial of this matter.

INTERROGATORY NO.5

Identify each person whom you intend to call as an expert witness during the discovery or trial of this action and with respect to each such expert witness, state the subject matter upon which the~ expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

RESPONSE NO. 5

I have not yet decided whether I will call any individuals to testify as an expert witness during the discovery or trail of this action.

INTERROGATORY NO.6

Have you, at any time from 1979 through November, 2001 or thereafter, requested any information from Bull regarding any employment benefits? If your answer is anything other than an unqualified "No," please state the following:

    a.     the date upon each request was made;

b.     whether the request(s) was/were oral or in writing, or both;

c.     to whom the request(s) was/were made;

d.     the response(s) to the request, whether oral or in writing or both.

RESPONSE NO. 6

Yes

On or about February 21, 2002 I met with Cecile Wright, Director of Human Resources for Bull Information Systems. I told her that I recently learned that I was improperly classified as a contractor for all the years I had worked for them and I should have at all times been classified as an employee. I told her that I had been investigating the issue of my misclassification and that I had learned through my investigation on the internet at a web site called P.A. C. E Professional Association of Contract Employees" (http://w.w.w.pacepros.com) and my review of the IRS rules, that I should be considered an employee. I told Ms. Wright that as an employee I am entitled to employee benefits for all the time I worked for Bull. I asked Ms. Wright what the company was going to do about this. Ms Wright asked me if I had gone to a lawyer. I said not yet. Ms. Wright said she would get back to me.

I also met with Kurt Thelen on or about February 28, 2002 at 10:00 a.m. in his office. Mr. Thelen said Ms. Wright was going on vacation and wanted him to take over the issue. Mr. Thelan started asking me a number of questions while he typed on the computer. I recognized a number of questions as coming from the IRS 20 part test for determining employee status. I think he eventually asked me all of the 20 questions from the IRS guidelines. He also asked me if anybody

in the company put me up to this and if I was talking about this issue with any one at all in the company. Mr. Thelen requested that I not discuss this issue with anybody else at the company at all. I asked Mr. Thelen about the retirement plan. Mr. Thelen replied that it would be no problem at all to put me in the retirement plan right away. He said it would be very easy to do. Mr. Thelen asked me what I wanted. I replied if I was entitled to these benefits I think I should get it.

I again met with Mr. Thelen on March 18, 2002 at 10:00 a.m. in his office. He said based on the IRS 20 questions the company was confident I was an independent contractor. He said I was paid me more than they would have if I was an employee. He said I wasn't trained. I replied that I like all the employees in the Art Department learned the new technology through on the job training. I said people are retiring and I am getting zilch. Mr. Thelen wrote this on his computer. Mr. Thelen again asked me what I wanted. I said I want whatever I am entitled to. Mr. Thelen said the company does not consider me an employee and owes me nothing but not to close the door. He said I could be put in the retirement plan that would be an easy thing to do and both the company and I would win. I said I wanted to get some advice. Mr. Thelen agreed and asked me not to talk to anyone other than a lawyer or financial person. He asked me to get back to him by March 22, 2002. Mr. Thelen left the employ of the company shortly thereafter.

INTERROGATORY NO. 7

Identify each and every person who "knowingly and intentionally defrauded the plaintiff into believing that he was not entitled to certain benefits

and protections," as alleged in paragraph 2 of the complaint.

RESPONSE NO. 7

I can not identify any one at the present time.

INTERROGATORY NO. 8

Identify each and every person who "intentionally" "mischaracterized" your status as an independent contractor rather than as an employee as alleged in paragraph 6 of the complaint, including in your answer every fact upon which you rely in making the allegation.

RESPONSE NO. 8

I can not identify anyone at the present time.

INTERROGATORY NO. 9

At any time from 1979. through November 2001, did you ask Bull to review or reconsider your status as an independent contractor? If your answer is anything other than an unqualified "No," please state the following:

    a.     the date upon each request was made;

    b.     whether the request(s) was/were oral or in writing, or both;

    c.     to whom the request(s) was/were made;

    d.     the response(s) to the request, whether oral or in writing or both.

RESPONSE NO. 9

**OBJECTION:**     The interrogatory is not designed to lead to the discovery of relevant evidence.

INTERROGATORY NO. 10

At any time from 1979 through November 2001, did you ask Bull to

classify you as an employee, to provide you with paid vacation time or sick leave? If your answer is anything other than an unqualified "No," please state the following:

    a.    the date upon each request was made;

    b.    whether the request(s) was/were oral or in writing, or both;

    c.    to whom the request(s) was/were made;

    d.    the response(s) to the request, whether oral or in writing or both.

RESPONSE NO. 10

**OBJECTION**:    The interrogatory is not designed to lead to the discovery of relevant evidence.

INTERROGATORY NO. 11

At any time from 1979 through November 2001, did you ask Bull to withhold taxes from the payments made to you for services performed? If so, please state the identity of the person to whom you made the request, when the request was made, and the response that was given.

RESPONSE NO. 11

**OBJECTION**:    The interrogatory is not designed to lead to the discovery of relevant evidence.

INTERROGATORY NO. 12

State with specificity each fact upon which you rely in alleging, in paragraph 44 of the complaint, that "Bull *took* specific actions to discriminate against Gavin for the purpose of interfering with his attainment of the right to participate in and receive benefits under the Plans. Bull acted with the specific

7

and willful intent to interfere with Gavin's right to Plan participation and benefits." Include in your answer the identity/ies of each person whom you allege took such actions, and a detailed description of the actions to which you refer.

RESPONSE NO. 12

I believe that the services I performed for defendant were at all times done in the capacity as an employee. When I first worked for defendant between from approximately 1976 – 1979 my job title was that of a Graphic Artist and I was classified as an employee by defendant. As such I was fully enrolled in all employee benefit plans. I returned to work for defendant later in 1979 in the same job as Graphic Artist. I returned to the same work area as before and was assigned my own drafting table, used defendant's materials and equipment. Everything was the same but defendant classified me as a contractor. From that time until my employment with defendant ended I was intentionally mischaracterized as an independent contractor for the purposes of denying me employee benefits.

INTERROGATORY NO. 13

Describe in detail the "work that Gavin did for other companies. outside of his normal work hours for Bull," as alleged in paragraph 22 of the complaint. Include in your answer the following:

a.    the capacity in which you performed such work (i.e., whether as an independent contractor, employee, leased employee);

b.    the identity of any entity or individual for whom you performed professional services and the date of same;

c.    a description of the service(s) performed;

d.    the compensation that you received for the service(s) performed;

e.    whether you reported the compensation received;

f.    the process by Which you were retained to perform such services;

and

g.    the date(s) upon which the services were performed.

RESPONSE NO. 13

**OBJECTION:**    The interrogatory is vague, overbroad, burdensome and not designed to lead to the production of relevant evidence.

INTERROGATORY NO. 14

Describe fully the services which you performed for Bull, including in your answer a description of your job duties, the method by which work was assigned to you, and a description of the supervisory review your work was subject to.

RESPONSE NO. 14

I was employed as a Graphic Artist. I performed the duties normally associated with those of a Graphic Artist and my job duties were precisely the same as other Graphic Artists employed by the defendant. We all did the same work. These duties included the creation of charts, graphs, product illustrations, the "paste up" of brochures and technical manuals and other company literature for training and sales. I also did photo type setting, and 35 millimeter slide preparation. I was responsible for maintaining, networking, troubleshooting and upgrading the 27 computers in the Communications department, assisting other employees in the Communications Department with computer related issues, I

9

also supported some off site meetings support where graphic presentations were being performed.

I was assigned job duties in the same manner as any other employee in the Communications Department. In the early years of my employment there was a job pile of work to be done. After a project was completed and reviewed by the supervisor, I and other employees would take one or more new job assignments from the job pile. Each Graphic Artist was qualified to do any of the work in the job pile.    The work was performed on company templates provided by the company using company equipment.

As some point in time I and other employees received our assignments from the supervisor of the department.

My work was subject to the same supervisory review as every other employee in the department. We were producing printed work so everything had to be to specification.  I presented my work to the supervisor who would approve the job or suggest changes.

INTERROGATORY NO. 15

Please describe each and every conversation you had with any agent or representative of Bull regarding your status and entitlement to benefits, including in your answer the identity/ies of each person with whom you spoke, the date(s) of each conversation, and the substance of each conversation (i.e., what you said and what was said to you).

RESPONSE NO. 15

See response to Interrogatory No. 6 above.

INTERROGATORY NO. 16

Please state each and every fact upon which you rely in alleging, in paragraph 33 of your complaint that Bull has discriminated against you in the attainment of rights under the Plans.

RESPONSE NO. 16

By improperly classifying me as an independent contractor when Bull knew or should have known that I was engaged as an employee Bull discriminated against me in the attainment of rights under the Plans.

INTERROGATORY NO. 17

Please state whether at any point in 1979 or thereafter, you ever filed articles of incorporation with the Massachusetts Secretary of State's office. If you have, please provide the date upon which the filing was made, the name of the corporation, the corporate tax payer identification number assigned, and the corporate officers listed. If the corporation has been dissolved, please provide the date upon which the corporation was dissolved.

RESPONSE NO. 17

**OBJECTION:** The interrogatory is not designed to lead to the discovery of relevant evidence.

Without waiving said objection, I have never filed articles of incorporation with the Massachusetts Secretary of State's office.

INTERROGATORY NO. 18

Please state whether at any point in 1979 or thereafter, you consulted with a financial advisor or accountant, for tax purposes or any other financial matter. If

11

your answer is anything other than an unqualified "No," please provide the date(s) upon which you consulted with such, the name and address of each individual with whom you consulted, and provide a summary of the circumstances.

RESPONSE NO. 18

**OBJECTION:**     The interrogatory is not designed to lead to the discovery of relevant evidence.

INTERROGATORY NO. 19

Please state in detail the manner in which Bull supervisors "controlled the means and manner of [your] work and production," as alleged in paragraph 28 of the complaint. Include in your answer:

    a.    the name(s) and title(s) of each such supervisor;

    b.    a description of the project(s) you contend were subject to such control, and

    c.    the date(s) upon which each project was performed.

RESPONSE NO. 19

See generally the response to Interrogatory No. 14 above. I was given every assignment by my supervisor in the same manner as every other employee employed by Bull as a Graphic Artist. My work was reviewed by my supervisor in the same manner as every other employee employed as a Graphic Artist. In the last few years of my employment I got assignments from my supervisor Ted Lavash or employees of Bull from various departments that came to me directly.

a.    The names of each of my supervisors were Mitch Mitchell, Steven

Miles, John Haskell, Ted Lavash, Sandra Richardson,   and Peter Stavropulous.

b.    Each project that I performed during the entire course of my

employment with Bull was subject to the direct control of my supervisor.

c.    I did thousands of assignments for Bull during the course of my

twenty two years of employment.  I have no knowledge of the date I performed

any particular job assignments were noted on Purchase Orders I submitted to the

defendant.

INTERROGATORY NO. 20

Please describe in detail all training that you allege was provided to you by

Bull. Include in your answer:

a.    the date(s) upon which such training occurred;

b.    whether the training was mandatory or optional, and

c.    the identity of each Bull representative who either offered or

required that you attend each training

RESPONSE NO. 20

To the best of my recollection neither I nor any other Graphic Artist was

provided training by Bull.  As noted above any training we received was on the

job as needed. In particular when we implemented new software programs I self

taught and guided the other Graphic Artists in their learning to use the software

and assisted them with any questions they had.

INTERROGATORY NO. 21

Were you ever offered the option of becoming employed in Bull's

"Contingent Workforce Division" ("CWD") and if your answer is anything other than an unqualified "No," please state:

    a.    the date(s) upon' which you became aware that it would be possible for you to convert to CWD status;

    b.    all Bull representatives with whom you discussed the possibility of converting to CWD status, and

    c.    all reasons why you declined to pursue converting to CWD status.

**RESPONSE NO. 21**

No.

**INTERROGATORY NO. 22**

If you claim to have suffered any financial loss as a result of being classified as an independent contractor rather than as an employee, please detail each item of such claimed loss, along with an explanation as to how the loss

**RESPONSE NO. 22**

I have suffered the following financial loss as a result of being classified as an independent contractor rather than as an employee

$57,345.00   representing one half of the self employment tax I was required to pay from 1979 – 2001.

$94,410.00 representing health insurance premiums I paid from 1979 – 2001.

$112,000.00 representing vacation and holiday pay from 1979 – 2001.

$38,400.00 in severance pay in accordance with the Company's severance pay plan.

Retirement income from company plan in an amount to be determined

Life insurance in an amount to be determined.

Unemployment benefits in an amount to be determined.

Failure to receive stock options.

Signed under the pains and penalties of perjury this 2 day of December 2005.

WILLIAM GAVIN

As to Objections:
WILLIAM GAVIN
By His Attorney

HOWARD I WILGOREN,
6 Beacon Street,
Suite 700
Boston, MA 02108
(617) 523 – 5233
BBO No. 527840

DATED: December 2, 2005

## CERTIFICATE OF SERVICE

I, Howard I. Wilgoren, certify that on November 29, 2005 I caused to be served a copy of the foregoing document by mailing a copy of same by first class mail, postage prepaid, to counsel for the defendant:

Laurence J. Donoghue, Esquire
Mary Jo Harris, Esquire
Morgan, Brown & Joy
200 State Street
Boston, MA 02109

Howard I. Wilgoren