IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM J. GAVIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-12207-GAO |
| v. ) | |
| ) | |
| BULL HN INFORMATION ) | |
| SYSTEMS INC., ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF
DEFENDANT BULL HN INFORMATION SYSTEMS INC.
FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Defendant Bull HN Information Systems Inc. ("Defendant" or "Bull") submits this memorandum of law in support of its motion for summary judgment on all counts of the Complaint and Demand for Jury Trial ("Complaint") filed by the plaintiff in this matter, William J. Gavin ("Plaintiff" or "Gavin").  In his Complaint, Gavin alleges that Bull misclassified him as an independent contractor rather than an employee, and thus wrongfully caused him to be denied "certain enumerated benefits." (Pl.'s Compl. at Paragraph entitled "Nature of the Action.")  Specifically, Gavin asserts the following causes of action against Bull: (1) breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104; (2) unlawful interference with attainment of ERISA benefits, 29 U.S.C. § 1140; (3) violation of the Massachusetts Payment of Wages Statute, M.G.L. c. 149, § 148; (4) breach of contract; (5) violation of the implied covenant of good faith and fair dealing; (6) unjust enrichment; (7) negligent

and/or intentional misrepresentation; (8) conversion; (9) violation of the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. § 3101, et seq.; and (10) violation of the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301, et seq.

As grounds for this Motion, and as set forth more fully herein, Bull states that judgment should enter for Bull as a matter of law because the undisputed facts reveal that all of Gavin's claims are time-barred.  The facts are undisputed that Gavin was aware of his status as an independent contractor, as well as the consequences of that status, in 1979; twenty-five years before he initiated this action.  Therefore, Gavin failed to commence the instant action within the various statutes of limitations governing his claims and they must be dismissed.

Moreover, Gavin's FICA and FUTA claims must fail as a matter of law because those statutes do not expressly or impliedly provide individuals with private rights of action.  Even assuming, *arguendo*, that Gavin's claims were timely brought, Gavin is equitably estopped from arguing that Bull misclassified him as an independent contractor since Bull offered to convert Gavin to employee status on two separate occasions, which offers Gavin declined.  Lastly, Gavin's breach of fiduciary duty claim under ERISA must fail on the further grounds that there is no evidence in the record whatsoever to support such a claim.

## II.     FACTS

Bull hereby incorporates and makes reference to Defendant's Concise Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, Pursuant to Local Rule 56.1 ("SUMF"), filed herewith.

**III.   ARGUMENT**

    **A.   STANDARD OF REVIEW**

"A motion for summary judgment should be granted when the evidence, taken in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Senior v. NSTAR Elec. & Gas Corp., 372 F. Supp. 2d 159, 161 (D. Mass. 2005) (citing Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003)).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; only a genuine issue of material fact is effective in this regard.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Such a "genuine" issue exists only when there is evidence from which a reasonable jury could return a verdict for the non-moving party.  Powers Law Offices, PC v. Cable & Wireless USA, Inc., 326 F. Supp. 2d 190, 192 (D. Mass. 2004).

To demonstrate the existence of a genuine issue capable of defeating summary judgment, Gavin, as the non-moving party, must present specific, competent evidence of his claims. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "This evidence 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (internal citations omitted), cert denied, 504 U.S. 985 (1992).  Simply relying upon conclusory allegations or denials is insufficient to defeat a motion for summary judgment. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995). See also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (noting that "conclusory

allegations, improbable inferences, and unsupported speculation" are insufficient to establish a genuine dispute of fact).

"Rule 56 may be used to determine the applicability of a statutory bar to a particular set of facts." Tedeschi v. Reardon, 5 F. Supp. 2d 40, 43 (D. Mass. 1998) (quoting Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)).

### B. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

#### 1. Gavin's ERISA Claims Are Time-Barred.

In Counts I and II of his Complaint, Gavin alleges claims under ERISA. Specifically, Gavin claims in Count I that Bull breached its fiduciary duty to him in violation of ERISA by failing to include him in Bull's ERISA plan and provide him with pertinent documents relating thereto, and also by misrepresenting to Gavin his status as an independent contractor rather than a common law employee. (Pl.'s Compl. at ¶¶ 38-40.) In Count II, Gavin claims that "Bull willfully failed to furnish [him] with information required by ERISA," and in so doing "discriminate[d] against [him] for the purpose of interfering with the attainment of the right to participate in and receive benefits under the [ERISA] [p]lans" in violation of § 510 of ERISA. (Pl.'s Compl. at ¶¶ 41-44.) As set forth herein, Bull is entitled to summary judgment on Gavin's ERISA claims because they are time-barred. See Tedeschi, 5 F. Supp. 2d at 44 (granting summary judgment on part of the plaintiff's § 1983 claim because it was barred by the applicable statute of limitations).

A claim for breach of fiduciary duty under ERISA "must be brought within six years of the breach or 'the latest date on which the fiduciary could have cured the breach or violation,' *and* within three years of the date on which the plaintiff had actual

knowledge of the breach." Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 118 (1st Cir. 2002) (quoting 29 U.S.C. § 1113) (emphasis in original). In cases of fraud or concealment, "ERISA provides an alternate statute of limitations of six years from the date the plaintiff discovers the breach." Id. As to Gavin's § 510 claim, the statute of limitations in the First Circuit for a claim of intentional interference with attainment of ERISA benefits is three years. Muldoon v. C.J. Muldoon & Sons, 278 F.3d 31, 32 (1st Cir. 2002), cert denied, 537 U.S. 977.

The critical question then becomes at what times do the foregoing limitations periods begin to run on ERISA claims like those Gavin alleges. The First Circuit squarely answered that question in its recent decision in Edes v. Verizon Communications, Inc., 417 F.3d 133 (1st Cir. 2005). In Edes, the plaintiffs were hired to work for GTE Service Corporation ("GTE") in April 1994. Although directly hired by GTE, each of the plaintiffs was instructed to sign on with one of two independent payroll agencies, which issued the plaintiff's paychecks during the entire period GTE retained their services. The plaintiffs received no paychecks or benefits from GTE, however, in all other respects, the plaintiffs were treated like "'regular,' full-time GTE employees." Id. at 135. In August 1998, GTE terminated the plaintiffs in conjunction with closing the facility where they worked. In May 1999, the plaintiffs made demands to GTE for ERISA benefits, which demands GTE denied on the grounds the plaintiffs had not been employed by GTE.

In October 2001, the plaintiffs filed a complaint alleging, *inter alia*, that GTE violated ERISA by: (1) breaching the fiduciary duties it owed them; and (2) interfering with their rights to attain ERISA benefits in violation of § 510. GTE moved to dismiss

5

the plaintiffs' ERISA claims, arguing they were untimely.  The District Court (Saris, J.) granted GTE's motion and the plaintiffs appealed.  See Edes v. Verizon Communications, Inc., 288 F. Supp. 2d 55 (D. Mass. 2003).

The First Circuit affirmed the dismissal of the plaintiffs' ERISA claims on timeliness grounds.  As to the breach of fiduciary duty claims, the Court held that the statute of limitations on those claims began to run in April 1994, at which time the plaintiffs had the requisite "actual knowledge" of the alleged breaches.  Edes, 417 F.3d at 142.  In so holding, the Court observed:

> Plaintiffs knew in April 1994 that they were not classified as employees on GTE's direct payroll.  At the same time, Plaintiffs received no ERISA benefits from GTE.  These facts establish that Plaintiffs had actual knowledge that if [GTE] had a fiduciary duty to classify them as eligible for ERISA plan participation and/or to design their plans accordingly, they had breached that duty.

Id.

The First Circuit then applied this same reasoning to the plaintiffs' § 510 interference claims.  The Court began its analysis by articulating the following rule: "[f]or a claim under ERISA § 510, 'it is the [challenged employment] decision and the participant's discovery of this decision that dictates accrual' of Plaintiffs' cause of action."  Id. at 139.  In light of that rule, the Court concluded that the plaintiffs' § 510 interference claims were untimely because "[GTE's] wrongful conduct, if any, involved the misclassification of Plaintiffs as off-payroll employees at their time of hire in April 1994" and the plaintiffs had not filed their complaint until 2001, long after the three-year statute of limitations had expired.  Id. at 139-140.[1]

---

[1] In an unpublished decision, this Court (Keeton, J.) found, contrary to Edes, that the plaintiff's ERISA claims accrued when the defendant company formally denied the plaintiff's claim for ERISA benefits, and not when the defendant hired and classified the plaintiff as an independent contractor.  See Walsh v. Gillette Co., No. Civ. A. 03-11557-REK, 2005 WL 2977426 (D. Mass. Sept. 13, 2005).  Edes, which was

6

With these principles in mind, Gavin's ERISA claims are clearly time-barred. The undisputed facts show that Gavin, who commenced the instant action on or about October 20, 2004, had actual knowledge that Bull classified him as an independent contractor instead of an employee, and was fully aware of the consequences of that classification, in 1979 when he returned to work for Bull after a brief, voluntary hiatus from the company.[2]  (See SUMF at ¶¶ 2-5.)  At deposition, Gavin testified that when he returned to work for Bull he did so knowing he was an independent contractor and not an "employee," that Bull did not consider him an "employee," and that not being an employee meant he was not eligible for vacation time, participation in the company's health insurance program, or in its retirement benefits plans.  (Id. at ¶¶ 8-9, 15, 19.) Gavin further acknowledged that he was aware that his wife, whom he married in 1981 and who Bull employed as a graphic artist, received vacation time, health insurance, and retirement benefits from Bull, whereas he did not because Bull considered him an independent contractor.  (Id. at ¶ 17.)  Indeed, Gavin was covered by his wife's health benefits during the time she was employed by Bull.  (Id.)

When construing the facts in the light most favorable to Gavin, the latest possible date that Gavin gained actual knowledge of his non-employee status was 1991.  In that year, Gavin was asked by his then-supervisor, Linda Nidle, to consider converting to "employee" status so he would become eligible for employee benefits (including vacation

---

decided one month earlier, was not cited in the Walsh decision.  More importantly, the First Circuit makes it clear in Edes that the critical employment decision that commences the running of the statute of limitations is a defendant company's classification of workers as either "employees" or "independent contractors."

[2] Prior to 1978, Bull performed services for Bull (then Honeywell) for approximately four years as a graphic artist with "employee" status."  (SUMF at ¶¶ 2-3, 13-14.)  During that period, Gavin received employee manuals from the company and became familiar with the vacation policies, retirement benefits, and health insurance plans Bull maintained and provided to its employees.  (Id. at ¶¶ 13-14.)

7

pay, health insurance, and retirement benefits).  (Id. at 20.)  Gavin, however, explicitly declined the offer because he did not want to incur the two-dollar decrease in his hourly rate of pay that would result by accepting Bull's benefits package.  (Id. at 20-22.)

Whether using 1979 or 1991 as the accrual date of the statutes of limitations, it cannot be disputed that those limitations periods have long since expired.  Even if Gavin presented evidence of fraud or concealment by Bull, which Gavin has not, he must have filed suit by 1997 at the absolute latest.  (See SUMF at ¶¶ 27-30.)  Gavin did not commence the instant action until October 2004 – seven years after the longest possible applicable statute of limitations expired.

Gavin's attempts to save his ERISA claims by alleging that Bull's allegedly unlawful acts were of a "continuing" nature are also unavailing.  (Pl.'s Compl. at ¶¶ 40, 44.)  Contrary to Gavin's allegations, the continuing violation doctrine does not apply to the instant case.  In Edes, the First Circuit rejected precisely the same argument that the plaintiffs in that case raised in their attempt to save their untimely § 510 claims.  417 F.3d at 139-40.  Specifically, the Court held:

> Plaintiffs have not alleged a continuing tort.  While Plaintiffs may have felt the ongoing effects of their ineligibility for ERISA benefits every time they received a paycheck …, Plaintiff's own allegations make clear that Defendants' wrongful conduct, if any, involved the misclassification of Plaintiffs as off-payroll employees at their time of hire… .  The district court properly dismissed Plaintiff's ERISA § 510 claim as time-barred.

Id.  Like the plaintiffs in Edes, the crux of Gavin's ERISA claims is Bull's discrete acts of classifying him as an independent contractor and denying him employee benefits, about which Gavin had actual knowledge in 1979, or 1991 at the latest.  Thus the continuing violation doctrine does not apply.

For all these reasons, Gavin's ERISA claims are time-barred. Accordingly, Bull is entitled to summary judgment on those claims contained in Counts I and II of Gavin's Complaint.[3]

### 2. Gavin's State Law Claims for Non-ERISA Benefits Are Time-Barred.

In Counts III and IV of his Complaint, Gavin also alleges that "[a]s a result of Bull's unlawful misclassification of [him] as a 'freelancer' or 'independent contractor,' Bull denied [him] participation in the non-ERISA benefit and compensation plans, agreements and programs that were available to Bull employees," and he is therefore entitled to damages under a number of Massachusetts statutory and common law theories. (Pl.'s Compl. at ¶¶ 45-51.) Like his ERISA claims, all of Gavin's state law claims are time-barred, and thus Bull is entitled to summary judgment on those claims.[4]

Where, as here, Gavin alleges state law claims that are pendent to his federal claims under ERISA, state statutes of limitations apply. See Heinrich ex rel. Heinrich v. Sweet, 49 F. Supp. 2d 27, 33 (D. Mass. 1999) ("state rather than federal law controls the statute of limitations periods for the state law causes of actions [sic]") (citing Guaranty

---

[3] In Count V of his Complaint, Gavin alleges a "conditional" claim seeking retroactive ERISA benefits in the event he succeeds on his ERISA claims set forth in Counts I and II. (Pl.'s Compl. at ¶¶ 52-60.) For the reasons stated above, Gavin's conditional claim must also be dismissed because the condition on which it is based (i.e., Gavin's success on his ERISA claims in Counts I and II) has not been satisfied.

[4] If this Court dismisses Gavin's ERISA claims, this Court should exercise its discretion and retain supplemental jurisdiction over Gavin's remaining state law claims. See 28 U.S.C. § 1376. Although courts generally decline to exercise supplemental jurisdiction over state law claims if the underlying federal predicate is dismissed early in the litigation, there are well-recognized exceptions to this general rule. O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 272 (1st Cir. 2001); Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251 (7th Cir. 1994). One such exception arises "when the statute of limitations has run on the pendent [state law] claim, precluding the filing of a separate suit in state court." Wright, 29 F.3d at 1251. Accord O'Connor, 251 F.3d at 273 ("The running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction"). Because, as set forth herein, Gavin's state law claims are barred by the applicable statutes of limitations, this Court should retain jurisdiction of the instant case and grant summary judgment for Bull. See Hansen v. Lamontagne, 808 F. Supp. 89 (D.N.H. 1992) (retaining jurisdiction over the plaintiff's state law claims where those claims were time-barred).

Trust Co. of New York v. York, 326 U.S. 99, 110 (1945)).  Gavin's claim under the Massachusetts Payment of Wages Statute is subject to a limitations period of three years from the date of the alleged violation.  M.G.L. c. 149, § 150.  Similarly, Gavin's tort claims under Massachusetts law for negligent and/or intentional misrepresentation and conversion are also subject to a three-year statute of limitations.  M.G.L. c. 260, § 2A; Lewis v. Dime Sav. Bank of New York, FSB, No. Civ. A. 92-4188-F, 1996 WL 754903, at *3 (Mass. Super. Ct. Dec. 27, 1996) (negligent and/or intentional misrepresentation); Nortek, Inc. v. Liberty Mut. Ins. Co., 65 Mass. App. Ct. 764, 770, 843 N.E.2d 706 (2006) (conversion).  Gavin's remaining claims under Massachusetts law for breach of contract, violation of the implied covenant of good faith and fair dealing, and unjust enrichment are all subject to a six-year statute of limitations.  M.G.L. c. 260, § 2; Nortek, Inc., 65 Mass. App. Ct. at 710-11 (breach of contract); Lewis, 1996 WL 754903, at *3 (breach of contract and violation of the implied covenant of good faith and fair dealing); Micromuse, Inc. v. Micromuse, PLC, 304 F. Supp. 2d 202, 209 (D. Mass. 2004) (unjust enrichment).

Under Massachusetts law, "a cause of action accrues on the happening of an event likely to put the plaintiff on notice."  Micromuse, Inc., 304 F. Supp. 2d at 209.  Not all harms, however, are immediately apparent, and thus statutes of limitations are tolled in both tort and contract where a plaintiff has been injured by an "inherently unknowable" wrong.  Id. at 209-10; Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 370, 778 N.E.2d 16 (2002) ("Actions in both contract and tort may be tolled until such time as the plaintiff discovers the facts giving rise to the cause of action"), review denied, 438 Mass. 1106, 782 N.E.2d 516 (2003).  The "inherently unknowable" criterion is used

interchangeably with the "knew or should have known" standard, or as it is more commonly known, the "discovery rule." Micromuse, Inc., 304 F. Supp. 2d at 210. "The discovery rule starts a limitations period running when events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed." Id. See also Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 208, 557 N.E.2d 739 (1990) (a cause of action accrues when the plaintiff has "(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was"). At that time, the statute of limitations begins to run even if the plaintiff does not know the full extent of his injuries. Micromuse, Inc., 304 F. Supp. 2d at 210. This is because a plaintiff, once placed on notice of a potential harm, has a duty to investigate the cause and extent of his injury. Id.

Under this standard, Gavin's pendent state law claims are also clearly time-barred. It is undisputed that in 1979, or 1991 at the absolute latest, Gavin knew that Bull had classified him as an independent contractor and did not provide him any of the benefits it provided to its employees as a direct result of that classification. Gavin's claims of injury are predicated on these actions by Bull, and thus the discovery rule provides that the statute of limitations began to run on his state law claims in 1979, or 1991 at the latest, when Gavin gained actual knowledge of Bull's actions and their consequences to him. Thus, in order for any of Gavin's state law claims to be timely, he must have commenced the instant action in or before 1997, at the very latest. Gavin, however, did not do so until October 2004, long after the applicable statutes of limitations expired. See Miller v. Trinity Oil Co., Inc., No. 9703051, 1999 WL 1318953, *3 (Mass. Super. Ct. Apr. 5, 1999) (statute of limitations was not tolled, and thus the plaintiff's

11

claims were time-barred, in an action under the Massachusetts Overtime Act, M.G.L. c. 151, § 1, et seq., and the Massachusetts Payment of Wages Statute, M.G.L. c. 149, § 148, where the plaintiff was classified as an independent contractor and had knowledge during the period he was so classified that he had not received overtime compensation that was due him).

Like his ERISA claims, Gavin also may not invoke the continuing violation doctrine to save his untimely state law claims. Instructive on this point is the Supreme Judicial Court's opinion in Silvestris v. Tantasqua Reg'l Sch. Dist., 446 Mass. 756, __ N.E.2d __ (2006). In Silvestris, the Supreme Judicial Court rejected the plaintiff's argument that the continuing violation doctrine applied to save her untimely claim under the Massachusetts Equal Pay Act, M.G.L. c. 149, § 105A, finding that a claim of unequal compensation is based on "discrete acts," and therefore does not qualify for the "limited [continuing violation] exception" to the statute of limitations. 446 Mass at 768-69. According to the Court, "[b]ecause pay claims … give rise to a cause of action each time they occur and are easily identifiable," to conclude otherwise "would eviscerate the … statute of limitations." Id. at 769-70. See also Kirley v. Kirley, 25 Mass. App. Ct. 651, 654-55, 521 N.E.2d 1041 (1988) ("The plaintiff may have suffered ongoing injuries following the actions of which he complained; that circumstance, however, does not transform the alleged wrongdoing into a continuing tort"), review denied, 402 Mass. 1104, 524 N.E.2d 400. Based on this reasoning, application of the continuing violation doctrine is not appropriate in a case like the instant one where Gavin's state law claims are based on Bull's discrete acts of classifying him as an independent contractor and denying him employee benefits.

Accordingly, Gavin's state law claims are time-barred, and thus, Bull is entitled to summary judgment on Count III of the Complaint.

### C. PLAINTIFF'S FICA AND FUTA CLAIMS FAIL BECAUSE THOSE STATUTES DO NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION.

In Count IV of his Complaint, Gavin also alleges causes of action against Bull under FICA and FUTA. (Pl.'s Compl. at ¶¶ 48-51.) Specifically, Gavin claims that he was "forced to make payments for federal taxes that should have been paid by Bull as his employer" because he was misclassified as an independent contractor, and thus Bull violated FICA and FUTA. Id. Gavin's FICA and FUTA claims, however, fail as a matter of law because those statutes neither expressly nor impliedly provide individuals such as Gavin with a private right of action.

It is undisputed that both FICA and FUTA, by their express terms, do not provide for private rights of action. See McDonald v. Southern Farm Bureau Life Ins. Co., 291 F.3d 718, 722 (11th Cir. 2002); Paukstis v. Kenwood Golf & Country Club, Inc., 241 F. Supp. 2d 551, 560 (D. Md. 2003); White v. White Rose Food, A Div. of DiGiorgio Corp., 62 F. Supp. 2d 878, 886-87 (E.D.N.Y. 1999). Thus, the question presented is whether private rights of action may be implied under FICA and/or FUTA. Bull submits that they may not.

The lone case decided in the First Circuit on this issue of which Bull is aware is Turner v. Unification Church, 473 F. Supp. 367 (D.R.I. 1978), aff'd, 602 F.2d 458 (1st Cir. 1979). In Turner, the District Court rejected the plaintiff's request that it recognize implied causes of action under FICA and FICA's criminal enforcement provision, 26 U.S.C. § 7202, finding that "the legislative scheme of the Internal Revenue Code does no

[sic] indicate that Congress intended to enforce these tax laws by providing civil causes of action or authorizing private attorneys general." 473 F. Supp. at 377. The Court observed that "Congress [has] provided numerous administrative remedies for civil complaints" and that "[t]he existence of administrative remedies is strong evidence of a Congressional intent to use the administrative avenues to address civil complaints… ." Id. Accordingly, the Court concluded that "[i]mplying the requested civil causes of action would not be consistent with the legislative scheme of these tax statutes." Id. (citing Cort v. Ash, 422 U.S. 66, 81 (1975)).

The Court's holding in Turner is consistent with the rule of law adopted by the majority of courts that private rights of action may not be implied under FICA and/or FUTA. See McDonald, 291 F.3d at 726 ("we hold that no private right of action may be implied under FICA"); Berger v. AXA Network, LLC, No. 03 C 125, 2003 WL 21530370, at *3 (N.D. Ill. July 7, 2003) (holding "there is no implied private right of action under FICA"); Paukstis, 241 F. Supp. 2d at 561 ("Neither FICA's text nor its structure supports a finding for an implied private right of action"); White, 62 F. Supp. 2d at 887 (holding that "a private cause of action cannot exist under the provisions of FUTA, FICA, or SUI"); Salazar v. Brown, 940 F. Supp. 160, 164-67 (W.D. Mich. 1996). But see Ford v. Troyer, 25 F. Supp. 2d 723, 726 (E.D. La. 1998); Sanchez v. Overmyer, 845 F. Supp. 1178, 1180-82 (N.D. Ohio 1993). Like Turner, the principal consideration guiding those courts' analyses was Congressional intent. With regard to Congressional intent, the Eleventh Circuit has pointedly commented:

> [T]here is no indication of any legislative intent, either explicit or implicit, to create a private right of action under FICA. Nothing in the language of the statute, its structure, or its legislative history provides any hint that Congress envisioned private lawsuits to enforce the provisions of this tax-collection law. In

14

fact, the legislative history is completely devoid of any indication that private lawsuits under FICA were even briefly contemplated by Congress.

McDonald, 291 F.3d at 724.

Also of import to courts declining to imply private rights of action is the fact that FICA and FUTA are tax-generating statutes that Congress did not enact for the "especial benefit" of individual plaintiffs like Gavin.  McDonald, 291 F.3d at 723 ("there is no basis from which to conclude that FICA was enacted for the especial benefit of employees like [the plaintiff]"); Paukstis, 241 F. Supp. 2d at 561 ("the intended beneficiary of FICA is the federal government, not individuals"); White, 62 F. Supp. 2d at 887 ("It is clear that the tax statutes at issue [(FUTA, FICA, and SUI)] are revenue-producing in nature and do not create a special benefit to the individual plaintiffs").

Bull submits that the line of reasoning articulated in the cases cited above applies with equal force to the claims Gavin asserts in his Complaint under FICA and FUTA.  In the absence of anything that indicates an intent by Congress to create private rights of action, or to benefit a class of individual plaintiffs such as Gavin, this Court should adopt the majority rule and hold that private rights of action cannot be implied under FICA and FUTA.  Accordingly, Bull is entitled to judgment as a matter of law on Gavin's FICA and FUTA claims.  Count IV should therefore be dismissed.[5]

### D. PLAINTIFF IS ESTOPPED FROM RAISING CLAIMS BASED ON HIS STATUS AS AN INDEPENDENT CONTRACTOR.

Even assuming, *arguendo*, that Gavin's claims were timely brought, Gavin is equitably estopped from arguing that Bull is liable to him for any damages dating from

---

[5] Even assuming, *arguendo*, that this Court were to find that a private right of action may be implied under FICA and/or FUTA, such an action is time-barred.  See Sanchez 845 F. Supp. at 1182 (applying a three year, three month, and fifteen day limitations period to the plaintiff's FICA claim).

15

1991 forward that may have been caused by being classified as an independent contractor since Bull offered to convert Gavin to employee status on two separate occasions, which offers Gavin declined.

Under Massachusetts law, the essential elements of an estoppel are: "(1) [a] representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made[;] (2) [a]n act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made[;] (3) [d]etriment to such person as a consequence of the act or omission." Nat'l Med. Care, Inc. v. Zigelbaum, 18 Mass. App. Ct. 570, 580, 468 N.E.2d 868 (1984), review denied, 393 Mass. 1104, 471 N.E.2d 1354; In re Capozzi's Case, 4 Mass. App. Ct. 342, 347 N.E.2d 685 (1976). Accord Law v. Ernst & Young, 956 F.2d 364, 368 (1st Cir. 1992) ("First, the party to be charged must 'make[ ] a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it.' Second, the other party must rely reasonably on the misrepresentation to his detriment"). "In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm." Rotundi v. Arbella Mut. Ins. Co., 54 Mass. App. Ct. 906, 906, 763 N.E.2d 563 (2002). Words or conduct that may support the finding of an estoppel include those that are "not consonant with fairness and designed to induce action by the [defendant] to his harm." Capozzi's Case, 4 Mass. App. Ct. at 348.

In the instant case, the undisputed evidence establishes that Bull has satisfied the essential elements of an estoppel. First, Gavin expressly represented to Bull on two

16

separate occasions, first in 1991 and again at some later, unspecified time, that he did not want to accept Bull's offers to become an "employee" with benefits. (SUMF at ¶¶ 20-26.) Second, Bull acted in reliance on Gavin's representations by keeping him as an independent contractor despite Bull's willingness and intention to make him an "employee." (See id.) Bull has also suffered an obvious detriment because of its reliance on Gavin's representations in that it has become the subject of Gavin's claims for legal damages. Lastly, the undisputed evidence shows that Gavin has engaged in a course of "conduct not consonant with fairness" by declining Bull's offer to convert to "employee" status, and then initiating suit against Bull for acting in accordance with his own request that he remain an independent contractor. Capozzi's Case, 4 Mass. App. Ct. at 348 ("The self insurer's present insistence that no compensation be allowed because the employee failed to discontinue a tort action when that failure was induced by the self insurer's insistence that the employee not discontinue the action was 'conduct not consonant with fairness' and clearly supported the … finding of an estoppel against the self insurer"). Accordingly, Gavin is estopped from arguing that Bull is liable to him for any damages dating from 1991 forward based on his status as an independent contractor, and thus summary judgment is proper on any of Gavin's claims that this Court may deem timely.

### E. PLAINTIFF'S ERISA BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW ON FURTHER GROUNDS.

In addition to being time-barred, Gavin's claim under ERISA for breach of fiduciary duty also fails as a matter of law on further grounds. In his Complaint, Gavin alleges that Bull breached its fiduciary duty to him by failing to provide him with pertinent documents relating to Bull's ERISA benefits plan. (Pl.'s Compl. at ¶¶ 38-40.) The First Circuit has unequivocally stated, however, that such a failure constitutes a

breach of fiduciary duty only in "exceptional circumstances" where the plaintiff presents evidence to show "bad faith, active concealment or fraud on the part of the plan administrators."  <u>Watson</u>, 298 F.3d at 113; <u>Sampson v. Rubin</u>, No. Civ. A. 00-10215-DPW, 2002 WL 31432701, at *6 n.3 (D. Mass. Oct. 29, 2002).  This Gavin fails to do.  There is not even so much as a scintilla of evidence in the record to show that Bull acted fraudulently or in bad faith or actively concealed plan materials from Gavin to deprive him of ERISA benefits.  (<u>See</u> SUMF at ¶¶ 27-30.)

For similar reasons, also unavailing is Gavin's claim that Bull made "continuing misrepresentations" that he was not entitled to ERISA benefits because he was an independent contractor.  (Pl.'s Compl. at ¶¶ 38-40.)  Gavin has no evidence that Bull intentionally mischaracterized him as an independent contractor or knowingly or intentionally made misrepresentations to him to cause him to believe he was not entitled to employment benefits.  (<u>See</u> SUMF at ¶¶ 27-30.)  As discussed, the undisputed evidence reveals that Gavin had actual knowledge that when he returned to work for Bull in 1979 he did so as an independent contractor, and thus he was not eligible for ERISA benefits.

In the absence of any evidence of bad faith, active concealment, fraud, or misrepresentation by Bull, Gavin's claim under ERISA for breach of fiduciary duty must fail as a matter of law.  For these further reasons, Bull is entitled to summary judgment on Count I of Gavin's Complaint.

## IV.   CONCLUSION

For all the foregoing reasons, Defendant Bull respectfully requests that this Court grant its Motion for Summary Judgment, dismiss Plaintiff Gavin's claims against it with prejudice, and for such other and further relief as the Court deems appropriate.

>  Respectfully submitted,
>
>  BULL HN INFORMATION SYSTEMS INC.
>
>  By: _____/s/ Mary Jo Harris_____
>  Laurence J. Donoghue (BBO No. 130140)
>  Mary Jo Harris (BBO No. 561484)
>  Daniel F. McCabe, Jr. (BBO No. 661096)
>  MORGAN, BROWN & JOY, LLP
>  200 State Street
>  Boston, MA 02109
>  Tel: (617) 523-6666

Dated:    May 31, 2006

## CERTIFICATE OF SERVICE

I, Mary Jo Harris, hereby certify that the foregoing document was filed through the ECF system on May 31, 2006, and that a true paper copy of this document was sent to those indicated as non registered participants on the Notice of Electronic Filing on May 31, 2006 by first class mail.  I further certify that a courtesy copy of the foregoing document was served on May 31, 2006 by first class mail upon plaintiff's counsel: Howard I. Wilgoren, Esq., 6 Beacon Street, Boston, MA, 02109.

Dated: May 31, 2006                                          _____/s/ Mary Jo Harris_____
                                                                                  Mary Jo Harris