Page 202

1    A. To my lawyer.
2    Q. To your lawyer. But do you know if there's
3 anything that you've looked at that has not been
4 presented to Bull?
5    A. No, I believe everything is right here.
6    Q. Did you speak to anybody, other than your
7 attorney, about your deposition today?
8    A. No.
9    Q. No?
10   A. No. I'm sorry, it was a quiet no.
11   Q. Just bear with me one second.
12       MR. DONOGHUE: Nothing further -- well,
13 almost, almost. I did want to make clear that we
14 are suspending at this point. There are documents
15 that we have requested that the plaintiff has
16 objected to producing, which we, if we're not able
17 to reach agreement, we may pursue a motion to
18 compel. As part of that, we would reserve the right
19 to reopen the deposition if we needed to ask
20 questions related to those documents. Primarily
21 they relate to records of Gavin Studio. But I just
22 want to make clear, I have no further questions, but
23 I'm just reserving our right, just so you know.
24       MR. WILGOREN: Okay, fair enough.

Page 203

1            CROSS EXAMINATION
2            BY MR. WILGOREN
3    Q. Did you attend staff meetings while you were
4 employed by Bull?
5    A. Some staff meetings, yes.
6    Q. Who would conduct those staff meetings?
7    A. Peter Stravropulous would direct most of
8 them.
9    Q. What period of time would Mr. Stravropulous
10 direct those staff meetings?
11   A. You mean years?
12   Q. Yes.
13   A. When he became directly involved with the
14 work flow, which was in the late '90's.
15   Q. Were you required to attend those meetings?
16   A. Yes, if they were department meetings, yes.
17   Q. What was discussed in those department
18 meetings?
19   A. Upcoming work, projects that were about to
20 come about, kick-off meetings or layoffs, company
21 business that pertained to us that we were involved
22 or could be affected by.
23   Q. Did each graphic artist give a report of
24 work in progress at this staff meeting?

Page 204

1    A. Not at his meetings. But Linda Nidle had
2 weekly meetings several days a week where everybody
3 would get together and talk about what they were
4 working on, just to see if there was any problems
5 that needed to be addressed. She just wanted to
6 have a feel of what was going on and make sure the
7 work was flowing.
8    Q. You say everyone would get together. Who is
9 "everyone"?
10   A. Everybody in the graphics department would
11 sit in a room, in a conference room.
12   Q. Would you be required to give a report at
13 each of those meetings?
14   A. Yes, we would state what we were working on.
15   Q. Did you attend employee meetings generally?
16       MR. DONOGHUE: Objection. Go ahead and
17 answer.
18   A. Some meetings I would attend, yes, depending
19 on what they were.
20   Q. How often would you attend employee
21 meetings?
22   A. Well, the meetings weren't on any particular
23 schedule. But if something important was coming up,
24 a big company function or kick-off meeting where

Page 205

1 everybody had to get involved to get it ready.
2    Q. What's a kick-off meeting?
3    A. A kick-off meeting is kind of like a rally,
4 a rally-type meeting, you know, talking about what
5 the company's doing and where it's going. Just
6 getting all the employees together and talking about
7 the company.
8    Q. And you would be required to attend those?
9    A. I'm not sure if I was required or not, but I
10 did attend several.
11   Q. Attorney Donoghue asked you in response to
12 his question, you said you attended several meetings
13 where the topic of discussion was stock options?
14   A. There was a couple of meetings, one in
15 particular I remember that they talked about stocks.
16   Q. Who was "they"?
17   A. I don't remember the vice president's name
18 now. I can picture him. He brought everyone down
19 the cafeteria, and they talked about how the company
20 was pushing people to buy stock, and that the
21 company was going to do well and went on and on
22 about the stocks.
23   Q. How did you become aware of those, that
24 meeting?